FILED
5/2/2022 9:38 AM
FELICIA PITRE
DISTRICT CLERK
DALLAS CO., TEXAS
Alejandro Rodela DEPUTY

**2 CIT ESERVE**

CAUSE NO. DC-22-04593 _____

| | | |
|---|---|---|
| **MIKE GLAZIER, AS TRUSTEE FOR THE JOEL M. EASTMAN IRREVOCABLE LIFE INSURANCE TRUST 2008, AND MELISSA EASTMAN, AS REPRESENTATIVE OF THE ESTATE OF JOEL M. EASTMAN,** | § § § § § § § § | **IN THE DISTRICT COURT OF** |
| *Plaintiffs,* | § § | |
| v. | § § | **DALLAS COUNTY, TEXAS** |
| **PRUCO LIFE INSURANCE COMPANY AND THE PRUDENTIAL INSURANCE COMPANY OF AMERICA,** | § § § § § § | |
| *Defendants.* | § § | 298th _____ **JUDICIAL DISTRICT** |

<u>**PLAINTIFFS' ORIGINAL PETITION**</u>

Plaintiffs, Mike Glazier, as Trustee for the Joel M. Eastman Irrevocable Life Insurance Trust 2008, and Melissa Eastman, as representative of the Estate of Joel M. Eastman (collectively "Plaintiffs"), file this Original Petition against Defendants Pruco Life Insurance Company ("Pruco") and the Prudential Insurance Company of America ("Prudential Insurance") (collectively "Prudential" or "Defendants"), and would respectfully show the Court as follows:

<u>**PARTIES**</u>

1.     Plaintiff Mike Glazier ("Mr. Glazier" or "Plaintiff"), as Trustee for the Joel Eastman Irrevocable Life Insurance Trust 2008 (the "Trust"), is an individual who resides in Johnson County, Kansas.  The Trust is a Texas trust.

2.     Plaintiff Melissa Eastman ("Mrs. Eastman"), as representative of the Estate of Joel M. Eastman, is an individual who resides in Dallas County, Texas.

3.      Defendant Pruco Life Insurance Company ("Pruco") is an Arizona corporation that regularly transacts business in Texas. Pruco can be served through its registered agent, CT Corporation System, 350 N. Saint Paul St., Dallas, Texas 75201.

4.      Defendant The Prudential Insurance Company of America ("Prudential Insurance") is a New Jersey corporation that regularly transacts business in Texas. Prudential Insurance can be served through its registered agent, CT Corporation System, 1999 Bryan St., Suite 900, Dallas, Texas 75201. Collectively, Pruco and Prudential shall be referred to as "Prudential" or "Defendants".

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction over the lawsuit because the amount in controversy exceeds the minimum jurisdictional requirements of this Court.

6.      This Court has personal jurisdiction over Prudential because Prudential regularly transacts business in Texas.[1]

7.      Venue is proper in Dallas, Texas, pursuant to Section 15.002(a)(1) of the TEXAS CIVIL PRACTICE AND REMEDIES CODE because all or a substantial part of the events or omissions giving rise to the claims and causes of action stated herein occurred in Dallas County. Further, venue is proper in Dallas, Texas pursuant to Section 15.032 of the TEXAS CIVIL PRACTICE AND REMEDIES CODE because Dallas County is the county in which the policyholder or beneficiary instituting the suit resided at the time the cause of action accrued.

## DISCOVERY

8.      This case should proceed as a Level 2 case pursuant to Texas Rule of Civil Procedure 190.3.

---

[1] *See* TEX. CIV. PRAC. & REM. CODE § 17.042.

## RULE 47 STATEMENT

9.     Pursuant to TEXAS RULE OF CIVIL PROCEDURE 47, Plaintiffs seek damages that are within the jurisdictional limits of the Court.  Specifically, Plaintiffs seek monetary relief over $1,000,000, including damages of any kind, penalties, costs, expenses, pre-judgment interest, and attorneys' fees.

10.     Plaintiffs further seek judgment for all other relief to which the Court deems them justly entitled.

## FACTUAL BACKGROUND

### A.     Issuance of $2 Million Life Insurance Policy to Joel M. Eastman

11.     On February 24, 2009, Prudential[2] placed coverage for a life insurance policy insuring Joel M. Eastman, numbered as L8 373 433 (the "Policy").

12.     The death benefit under the Policy was Two Million Dollars ($2,000,000), which was to be paid into the Trust.

13.     Pursuant to the Policy, Mr. Eastman, on behalf of the Trust and agent for the Trust, paid Prudential premiums for 11 years, paying Prudential over One Hundred Thirty-five Thousand Dollars ($135,000) in premiums.  He did this so that his family would be cared for in the event of his death.

14.     The Policy required Prudential to pay its beneficiary "promptly" if Mr. Eastman were to die during a 38-year term, with a guaranteed premium end date of November 20, 2028.

---

[2] Whenever this Petition alleges that Prudential did any act or thing, it is meant that Prudential or its subsidiaries, agents, officers, servants, employees, and/or representatives did, performed, and/or participated in such act or thing. They were also done on behalf of or under Prudential's control, with full authorization or ratification of Prudential, and/or done in the normal routine, course, and scope of the agency or employment of Prudential or its agents, officers, servants, employees, and/or representatives.

15.     The Policy included a 31-day grace period for past due premium payments that provided the contract could stay in force during the grace period.

16.     The Policy also permitted reinstatement after the grace period had ended under certain circumstances. The Policy even allowed reinstatement after the death of the insured.

**B.      2014 Reinstatement**

17.     In 2014, the Policy lapsed due to a banking error with the May 2014 payment.

18.     Mr. Eastman received notice of the Policy lapse and as agent of the Trust requested reinstatement.  Prudential did not ensure the notice was sent to the Trustee.

19.     On October 30, 2014, Prudential sent confirmation that the Policy had been approved for reinstatement.  The correspondence requested a check for $9,257.79 (the amount of 3 quarterly installments) to bring premiums current.  Indeed, the letter specifically stated that with that requested payment "premiums will then be paid to February 20, 2015."

20.     Mr. Eastman, as agent of the Trust, sent payment as requested which was credited to his account on November 19, 2014, paying the premiums *to* February 20, 2015.

**C.      Payment History**

21.     After the 2014 reinstatement, which payed the premiums *to* February 20, 2015, Mr. Eastman, as agent of the Trust, paid the following installments on the dates set forth in the chart below:

| Installment Due Date | Payment Date |
| --- | --- |
| 2/20/2015 | 12/23/2014 |
| 5/20/2015 | 3/18/2015 |
| 8/20/2015 | 6/17/2015 |
| 11/20/2015 | 9/21/2015 |
| 2/20/2016 | 12/8/2015 |
| 5/20/2016 | 2/11/2016 |
| 8/20/2016 | 5/19/2016 |
| 11/20/2016 | 9/14/2016 |

| | |
|---|---|
| 2/20/2017 | 11/29/2016 |
| 5/20/2017 | 2/17/2017 |
| 8/20/2017 | 5/24/2017 |
| 11/20/2017 | 9/6/2017 |
| 2/20/2018 | 11/30/2017 |
| 5/20/2018 | 2/23/2018 |
| 8/20/2018 | 5/23/2018 |
| 11/20/2018 | 9/6/2018 |
| 2/20/2019 | 11/20/2018 |
| 5/20/2019 | 3/27/2019 |
| 8/20/2019 | 6/12/2019 |
| 11/20/2019 | 9/26/2019 |

22.     Thus, the Policy premiums were paid through November 20, 2019 up to February 20, 2020.

**D.     Change of Address**

23.     Based upon Prudential's practices during the parties' previous 9-year course of dealing, Prudential sent important notices related to the Policy to Mr. Eastman's address at 4135 Windsor Parkway, Dallas Texas 75205 (the "Windsor Address").  These important notices relating to the premium, nonpayment, lapse, and steps needed to reinstate the Policy were addressed to the Trustee, but mailed to Mr. Eastman's address.

24.     On or about January 17, 2017, the Eastmans moved from the Windsor Address.

25.     After their move, the Eastmans notified their business and personal contacts of their new address. On or about May 23, 2017, Prudential was requested to update the mailing address on behalf of the Trust to the new address at 11943 Edgestone, Dallas, Texas 75230 (the "Edgestone Address").

26.     On or about July 8, 2017, Prudential's premium notice, which they sent to the wrong address, was returned as undeliverable.  Tiffany Smith, a representative of Prudential, initiated Prudential's internal process to conduct an Accurint inquiry to locate a deliverable

address.  However, Prudential apparently still failed to properly update the address on the Policy, as it thereafter still failed to send any premium notices to the Edgestone Address.

**E.    September 26, 2019 call**

27.    On or about September 26, 2019, Mr. Eastman called Prudential and made a premium payment on behalf of the Trust.  Mr. Eastman was concerned that he had not received a premium notice after updating the address on the Policy.  During the call he, as agent for the Trust, confirmed, again, that the proper address for the Policy was 11943 Edgestone, Dallas, Texas 75230.  Paul Francisco, a representative of Prudential, confirmed and represented that 11943 Edgestone, Dallas, Texas 75230, was the address on file for the Policy.  Mr. Francisco further represented that Prudential would send quarterly premium notices to the Edgestone Address, which he represented was on file.

28.    In addition, Mr. Eastman requested, as agent of the Trust, that Prudential's quarterly notices be sent to him via email and provided Mr. Francisco with his email address. However, Prudential has been unable to show Mr. Eastman was sent a single quarterly premium notice or reinstatement notice to that email address.

29.    After the Eastmans moved from the Windsor Address, and despite continued efforts to update and confirm the correct mailing address for the Policy, Prudential continued to send important written correspondence, including premium notices and reinstatement notices, to the Windsor Address.

30.    On September 27, 2019, Prudential, again, mailed correspondence to the Windsor Address.  This correspondence confirmed receipt of Mr. Eastman's payment on behalf of the Trust and stated that the Policy was paid *through* November 20, 2019.

**F.**    **Premium Notice Dated October 8, 2019 Sent to Wrong Address**

31.    On October 8, 2019, directly following these events, Prudential purportedly sent a Premium Notice to the stale Windsor Address, again.[3]  The notice was for the $3,085.93 premium due by 11/20/19, for the period from 11/20/19 to 2/19/20.[4]  However, that notice is incorrect. Based on Prudential's own correspondence and payment history, the September 26, 2019 premium payment paid the Policy *through* November 20, 2019, and up *to* February 20, 2020.

32.    Still, Prudential's purported notice failed to be sent to the proper address.

**G.**    **Purported Notice of Lapse, Sent Again to Wrong Address**

33.    On December 31, 2019, despite having the correct mailing address for the Policy and an email address, Prudential purportedly sent a letter to the stale Windsor Address that stated Prudential had not received the November 20, 2019 quarterly premium payment, and as a result, the Policy had lapsed on December 21, 2019.[5]  Prudential's prior correspondence and payment history show this to be inaccurate, as the November 20, 2019 installment was paid on September 26, 2019, which if properly applied would have paid the account *through* November 20, 2019 up *to* February 20, 2020.  However, if Prudential had mailed the December letter to the correct address—the Edgestone Address—Mr. Eastman would have received the notice and paid a premium installment as he had many times before after receiving proper notice.

**H.**    **Premium Notice Dated January 7, 2020 and Sent to Wrong Address**

34.    On January 7, 2020, apparently changing course, Prudential purportedly sent a Premium Notice of the quarterly premium for the period from 2/20/20 to 5/19/20 due on or before

---

[3] It is worth noting that save for one letter after Mr. Eastman's death, even the residents of the Windsor Address deny receiving any correspondence from Prudential.

[4] Plaintiffs learned of this purported communication only after making the Claim.

[5] Plaintiffs have learned of this letter only after making the Claim.

February 20, 2020 ("Notice").[6] Again, Prudential sent the Notice to the stale Windsor Address, despite having the correct mailing address for the Policy and an email address.

35.     Mrs. Eastman sent Prudential a check for the full amount of the premium, $3,085.93, before the February 20, 2020 due date listed on the Notice.[7]

36.     Prudential cashed the check.[8]

**I.     Mr. Eastman's Death and Initial Notice to Prudential of Mr. Eastman's Death**

37.     On February 15, 2020, Mr. Eastman died in a skiing accident in Durango, Colorado, leaving behind his wife and two children.

38.     On February 17, 2020, Prudential's agent for the Policy, John Calandro, appears to have informed Prudential that Mr. Eastman had passed away.

**J.     Prudential's Offer to Reinstate the Policy**

39.     On February 25, 2020, despite having previously sent a notice that the Policy had lapsed and despite learning more than one week prior that Mr. Eastman had died, Prudential purportedly sent a letter to the stale Windsor Address stating that the policy had lapsed, but offering to reinstate it. This was consistent with Prudential's disorganized handling of the Policy, notices, and the accounting of premium payments.

**K.     Claim Made to Prudential**

40.     On March 2, 2020, Mr. Cavanaugh, in his capacity as the Trustee, notified Prudential of Mr. Eastman's tragic death and made a claim for payment of the Policy's death benefit.

---

[6] Plaintiffs have learned of this notice only after making the Claim.

[7] Plaintiffs have learned of this notice only after making the Claim.

[8] Consistent with Prudential's disorganized handling of the Policy, Prudential cashed the check even after it was notified that Mr. Eastman had died, but later issued a check to Mrs. Eastman in the same amount "refunding" the payment because Prudential contended the policy had lapsed.

41.     On March 11, 2020, Linda Baelz, Customer Service Representative with Prudential, sent a notice to Mr. Cavanaugh (at the address he provided Prudential in his March 2 Claim Letter) stating that Prudential's records indicate that the Policy lapsed on 11/20/19 for non-payment of the premium, no longer provides any life insurance protection and has no cash value, but may still be eligible for reinstatement.

42.     Three days later, Ms. Baelz sent a similar letter that stated that Prudential's records indicate that the Policy lapsed on 1/22/20 for non-payment of the premium, no longer provides any life insurance protection and has no cash value, and could not be reinstated.

43.     Two days after Mr. Cavanaugh received Ms. Baelz' second letter at his home address that he had provided in his March 2, 2020 Claim Letter, Prudential sent Mr. Cavanaugh a letter to the stale Windsor Address stating that it could not accept the $3,085.93 payment (that it had already, in fact, accepted by cashing the check) because the life insurance policy had ended.[9]

44.     In January 2021, Prudential provided its coverage evaluation.   In its letter, Prudential acknowledged that the Policy did not lapse unless the November 20, 2019 installment was paid before the end of the 31-day grace period.   However, even after the 31-day grace period the Policy could be reinstated.   Prudential misrepresented in the letter that it had no record of the request to change the address for the Policy and nor record that any mail was returned as undeliverable — Prudential was wrong on both accounts.   In the letter, Prudential misrepresented that the Policy lapsed on November 20, 2019, when in fact the Policy was paid *through* November 20, 2019 and up to February 20, 2020, with the September 26, 2019 payment.

---

[9] The current residents of the Windsor home provided this correspondence to Mrs. Eastman given that Prudential failed to send it to the address provided.

Then Mrs. Eastman's February 2020 payment, technically paid the premiums *through* February 2020 and up to May 20, 2020.

**L.**     **Prudential's use of an unlicensed agent**

45.     John Calandro solicited insurance on behalf of Prudential.  In addition to receiving and transmitting the insurance application to and from Prudential, Mr. Calandro received, collected, and transmitted insurance premiums.

46.     However, Prudential was aware that Mr. Calandro was not a licensed insurance agent.  In fact, Prudential rejected Mr. Eastman's original application for insurance based on Mr. Calandro's lack of licensing.  Then after requesting a new application, Prudential placed coverage in February 2009, still using Mr. Calandro as the agent. Mr. Calandro received a commission for placing Mr. Eastman's Policy.

47.     Prudential repeatedly represented that Mr. Calandro was a licensed representative for Prudential on Policy documents and communications.  Prudential even purported to send him notices of vital documents to his home address also located on Windsor Parkway under the Policy including notices regarding delays in premium payments and instructions on how to reinstate the Policy. Shortly after the Eastmans moved, Mr. Calandro also moved. Mr. Calandro, as an agent of Prudential, knew that Prudential provided and would continue to provide him vital information about the Policy. However, because he failed to inform Prudential with his new address, he failed to reasonably keep Mr. Eastman informed about his Policy.

## CAUSES OF ACTION

**A.**     **Breach of Contract**

48.     Plaintiffs reiterate and adopt each and every statement in the foregoing paragraphs as if set forth fully here.

49.     The Policy was a valid, enforceable contract between the parties.

50.     Pursuant to the Policy, Mr. Eastman was required to pay quarterly premiums of $3,085.93.  He did so for 11 years, paying Prudential over One Hundred Thirty-five Thousand Dollars ($135,000) in premiums.

51.     The Policy required Prudential to pay its beneficiary "promptly" if Mr. Eastman were to die during a 38-year term, with a guaranteed premium end date of November 20, 2028.

52.     Mr. Eastman died during that term, yet Prudential has refused to pay the death benefit.

53.     Further, Prudential failed to properly account for and apply policy premiums throughout the life of the Policy, and now uses its failed accounting as a justification to deny paying the death benefit it owes.

54.     Prudential's breach has caused Mrs. Eastman and the Trust injury in the form of the full value of the Policy, attorneys' fees, interest, and costs of filing suit.

**B.    Negligence**

55.     Plaintiffs reiterate and adopt each and every statement in the foregoing paragraphs as if set forth fully here.

56.     Prudential had a duty to keep its insured reasonably informed based upon its course of dealing with its insured and its own policy to send premium notices, notices of lapses in coverage, letters with instructions on reinstatement, and other letters regarding important matters related to the Policy.[10] In fact, as Prudential's agent, Mr. Calandro also had a duty to reasonably attempt to keep Mr. Eastman informed about the Policy when Mr. Calandro received information pertaining to the Policy.[11] As an agent of Prudential, Mr. Calandro breached this duty by failing to

---

[10] *Haye v. Elton Porter Marine* Insurance, 2009 Tex. App. LEXIS 1704 (Tex. App.—Corpus Christi Mar. 5, 2009).

[11] *Kitching v. Zamora,* 695 S.W.2d 553, 554 (Tex. 1985).

update his own address as he was aware Prudential purportedly sent him important correspondence concerning the Policy.

57.     Prudential breached this duty by failing to notify Mr. Eastman or the Trust of the past due premium, Policy lapse, and for failing to provide him or the Trust information as to how to reinstate the Policy. Indeed, Prudential's telephone records indicate that even though Mr. Eastman, as agent of the Trust, updated the address for the Policy on at least two occasions (on 5/23/17 and on 9/26/19), and further requested he receive pertinent Prudential communications via email, Prudential purportedly and negligently sent its communications to a stale address and failed to inform and advise Mr. Eastman or the Trust of the late premium payment, lapse, and the ability to reinstate.

58.     Prudential also had a duty to maintain accurate records, including, but not limited to, updating the Policy address after the Eastmans moved so that notices and other information regarding the Policy would reach its insured and the owner of the Policy.  Prudential assumed this duty to act reasonably and to maintain accurate records when it took the initiative to send important correspondence to Mr. Eastman on behalf of the Trust.  Prudential breached this duty by failing to update the Policy address for *years* and continuing to send important correspondence to the stale Windsor Address even after mail had been returned to Prudential as undeliverable and after being provided the correct address multiple times.

59.     Instead of providing as many access points as possible to make premium payments and stay informed regarding the Policy, Prudential's company policies narrowed Mr. Eastman's options, making it harder to fulfill his obligation to pay the premiums.  Indeed, Prudential refused Mr. Eastman online access because the Policy was paid to the benefit of a trust. Thus, Mr. Eastman's only methods of communicating with Prudential regarding his six-figure

investment in the wellbeing of his family were via telephone and mail, making Prudential's mailed correspondence with Mr. Eastman all the more important.

60.     Prudential disputes that it owes any proceeds under the Policy, asserting that the November 20, 2019 installment was not timely paid.   Although Plaintiffs dispute Prudential's assertion, if Prudential were correct then as a result of Prudential's negligence, Plaintiffs suffered damages in the amount of $2 million, the full value of the Policy's death benefit.

**C.      Violations of the TEXAS INSURANCE CODE**

61.     Plaintiffs reiterate and adopt each and every statement in the foregoing paragraphs as if set forth fully here.

62.     Prudential's conduct constitutes multiple violations of the TEXAS INSURANCE CODE.   Violations under chapter 541 are made actionable by Section 541.151 of the TEXAS INSURANCE CODE.[12]   Plaintiffs are a "person" as defined by Section 541.002(2) of the TEXAS INSURANCE CODE.   Likewise, Prudential is a "person" as defined by Section 541.002(2) of the TEXAS INSURANCE CODE.

63.     Violations under Chapter 542 are made actionable by Section 542.060 of the TEXAS INSURANCE CODE.[13]

64.     Plaintiffs had a claim under the Policy.  Plaintiffs gave proper notice of the claim to Prudential.   Prudential is liable to pay the death benefit.   However, Prudential wrongfully rejected Plaintiffs' valid claim.

65.     Prudential violated Chapter 541 and 542 of the TEXAS INSURANCE CODE by:

   a.      misrepresenting and/or failing to discuss with the insured or owner pertinent facts or policy provisions relating to coverage at issue, in violations of TEX. INS. CODE § 541.060(a)(1), including (1) representing on or about

---

[12] *See* TEX. INS. CODE § 541.151.

[13] *See* TEX. INS. CODE § 542.060.

May 23, 2017 and September 26, 2019 that the Policy address was updated to the Edgestone Address, (2) representing on or about September 26, 2019 that Policy Notices would be delivered to the Edgestone Address and Mr. Eastman's email address, (3) misrepresenting on or about December 31, 2019 that the Policy had lapsed before Mr. Eastman's death when it had not, and (4) representing on or about February 25, 2020 and March 11, 2020 that the Policy was eligible for reinstatement after Prudential was informed about Mr. Eastman's death and then refusing to honor that representation;

b.    failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of a claim with respect to which your liability has become reasonably clear, in violation of TEX. INS. CODE § 541.060(a)(2), including failing to pay the policy proceeds owed even after being shown that the policy premiums were current as of Mr. Eastman's death and after being shown that Prudential represented after Mr. Eastman's death that the Policy could be reinstated for an additional premium payment, which was paid, but then Prudential failed to reinstate the policy as it had promised;

c.    failing to promptly provide the insured or owner a reasonable explanation of the basis in the policy, in relation to the facts or applicable law, for your denial of the claim in violation of TEX. INS. CODE § 541.060(a)(3);

d.    failing within a reasonable time to affirm or deny coverage of a claim in violation of TEX. INS. CODE § 541.060(a)(4);

e.    refusing to pay the claim without conducting a reasonable investigation with respect to the claim in violation of TEX. INS. CODE § 541.060(a)(7), including failing to ensure a proper allocation of premium payments from the placement of coverage through Mr. Eastman's death before denying coverage;

f.    misrepresenting the insurance policy by:

    i.    making untrue statements in violation of TEX. INS. CODE § 541.061(1), including (1) representing on or about May 23, 2017 and September 26, 2019 that the Policy address was updated to the Edgestone Address, (2) representing on or about September 26, 2019 that Policy Notices would be delivered to the Edgestone Address and Mr. Eastman's email address, (3) misrepresenting on or about December 31, 2019 that the Policy had lapsed before Mr. Eastman's death when it had not, and (4) representing on or about February 25, 2020 and March 11, 2020 that the Policy was eligible for reinstatement after Prudential was informed about Mr. Eastman's death and then refusing to honor that representation;

ii.       failing to state a material fact necessary to make other statements made not misleading, considering the circumstances under the statements were made in violation of TEX. INS. CODE § 541.061(2), including (1) representing on or about May 23, 2017 and September 26, 2019 that the Policy address was updated to the Edgestone Address, (2) representing on or about September 26, 2019 that Policy Notices would be delivered to the Edgestone Address and Mr. Eastman's email address, (3) misrepresenting on or about December 31, 2019 that the Policy had lapsed before Mr. Eastman's death when it had not, and (4) representing on or about February 25, 2020 and March 11, 2020 that the Policy was eligible for reinstatement after Prudential was informed about Mr. Eastman's death and then refusing to honor that representation;

iii.     making statements in a manner that would mislead a reasonably prudent person to a false conclusion of a material fact in violation of the TEX. INS. CODE § 541.061(3), including (1) representing on or about May 23, 2017 and September 26, 2019 that the Policy address was updated to the Edgestone Address, (2) representing on or about September 26, 2019 that Policy Notices would be delivered to the Edgestone Address and Mr. Eastman's email address, (3) misrepresenting on or about December 31, 2019 that the Policy had lapsed before Mr. Eastman's death when it had not, and (4) representing on or about February 25, 2020 and March 11, 2020 that the Policy was eligible for reinstatement after Prudential was informed about Mr. Eastman's death and then refusing to honor that representation; and

iv.     making a material misstatement of law in violation of the TEX. INS. CODE § 541.061(4), including stating that it was the Policy owners' responsibility to advise Prudential of address changes instead of Mr. Eastman as an agent of the Trust;

g.     failing to provide a timely notice of acceptance or rejection in violation of TEX. INS. CODE § 542.056; and

h.     failing to timely pay the claim after receiving all items, statements, and forms reasonably requested in violation of TEX. INS. CODE § 542.055-059.

66.    Prudential's wrongful acts and omissions in violation of the Texas Insurance Code were the producing cause of Plaintiffs' damages, including actual damages (direct, indirect and/or consequential), costs, and attorneys' fees.

67.     Prudential's wrongful acts and omissions in violation of the TEXAS INSURANCE CODE were done knowingly, which entitles Plaintiffs to three times their actual damages.

68.     Prudential's wrongful acts and omissions in violation of Chapter 542 of the TEXAS INSURANCE CODE entitle Plaintiffs to recover 18% interest on their actual damages.

69.     Therefore, under the TEXAS INSURANCE CODE, Plaintiffs are entitled to recover three times their actual damages (direct, indirect and/or consequential), 18% interest, costs, and attorneys' fees.

**D.      Bad Faith / Breach of the Duty of Good Faith and Fair Dealing**

70.     Plaintiffs reiterate and adopt each and every statement in the foregoing paragraphs as if set forth fully here.

71.     A special relationship exists and continues to exist between Prudential and Plaintiffs as a result of the life insurance policy issued by Prudential.  Inherently unequal bargaining power exists between Plaintiffs and Prudential.

72.     Prudential had no reasonable basis for denying or delaying payment of the Plaintiffs' claim, and it knew or should have known that it had no reasonable basis for denial.

73.     Prudential considered only its own interests, proceeded only according to its one-sided and self-serving interpretation of the Policy, and attempted to conceal from Plaintiffs that Prudential, in fact:

      a.      was provided the proper address for correspondence regarding the Policy on or about May 23, 2017 and September 26, 2019;

      b.      had received undeliverable mail on or about July 8, 2017 regarding the Policy in which it had sent to the wrong address;

      c.      had received the proper payments on the Policy *through* November 20, 2019 and up *to* February 2020, but had allocated the payments in a manner that was to Prudential's sole benefit and to avoid coverage;

      d.     had allowed an unlicensed agent to solicit, procure, and accept premiums for the Policy even after knowing he was unlicensed; and

      e.     had corresponded with the unlicensed agent regarding key Policy issues, without ensuring such communications were provided to the insured or Policy owner.

74.    Prudential pre-textually looked only for ways to avoid coverage rather than first trying to find coverage or even fulfilling its obligation to pay the Trust the benefits owed under the Policy so that Mr. Eastman's family could be taken care of.

75.    Prudential had a duty to investigate the claim fairly and objectively, but it clearly failed to make any attempt to do so, as evidenced by its wholesale denial of the claim without investigating the proper allocation of premium payments during the life of the Policy.

76.    Nonetheless, Prudential is charged with full and complete knowledge of what a reasonable investigation would have revealed, and its actions must be judged accordingly.

77.    Accordingly, Prudential failed to attempt in good faith to effectuate a prompt, fair, and equitable settlement of a claim where its liability had become reasonably clear.

78.    Further, Prudential's failure to comply with provisions of the Unfair Claim Settlement Practices Act are evidence of Prudential's bad faith, including Prudential:

      a.     knowingly misrepresenting to Plaintiffs pertinent facts or policy provisions relating to coverage at issue in violation of TEX. INS. CODE 542.003(b)(1), including (1) representing on or about May 23, 2017 and September 26, 2019 that the Policy address was updated to the Edgestone Address, (2) representing on or about September 26, 2019 that Policy Notices would be delivered to the Edgestone Address and Mr. Eastman's email address, (3) misrepresenting on or about December 31, 2019 that the Policy had lapsed before Mr. Eastman's death when it had not, and (4) representing on or about February 25, 2020 and March 11, 2020 that the Policy was eligible for reinstatement after Prudential was informed about Mr. Eastman's death and then refusing to honor that representation;

      b.     failing to adopt and implement reasonable standards for the prompt investigation of claims arising under the insurer's policies in violation of TEX. INS. CODE 542.003(b)(3), including apparently lacking any standard to

        verify payment history before denying a family the death benefit it is owed for the loss of a loved one;

c.    not attempting in good faith to effect a prompt, fair, and equitable settlement of a claim submitted in which liability has become reasonably clear in violation of TEX. INS. CODE 542.003(b)(4), including its continued denial to pay the Policy proceeds owed despite being repeatedly instructed of its failure to properly pay the Policy proceeds owed; and

d.    compelling a policyholder to institute a suit to recover an amount due under a policy in violation of TEX. INS. CODE 542.003(b)(5).

79.    Prudential's conduct constitutes a breach of the common law duty of good faith and fair dealing owed to the Plaintiffs.

80.    Prudential's breach of the duty of good faith and fair dealing proximately caused actual and consequential damages to Plaintiffs.

81.    Prudential's breach of the duty of good faith and fair dealing was malicious and/or grossly negligent and therefore support an award of punitive damages.  Further, Prudential exhibited recklessness or deliberate indifference by failing to update the Policy address for *years*. Prudential knew that the Windsor Address was incorrect, yet it continued to send important communications regarding the Policy there, where Prudential knew they would never be received.

82.    Prudential was directly informed of and had actual knowledge of the grievous damages and extraordinary harm that would be caused by breach of its duty of good faith in the event of a wrongful denial of coverage.  In fact, Prudential was consciously aware that important Policy documents had been returned as undeliverable after mailing them to the wrong address and the history of premium payments that had been misapplied back to the inception of the Policy.

83.    Prudential's actions ensured that Mr. Eastman's family would never see the benefit of his life insurance term policy.  Therefore, for Prudential's breach of the duty of good faith and fair dealing, Plaintiffs are entitled to compensatory damages, including all forms of loss resulting

from Prudential's bad faith, and other damages for additional costs, economic hardship, punitive damages, and exemplary damages.

**E.**      **Unauthorized Practice of Insurance**

84.      Plaintiffs reiterate and adopt each and every statement in the foregoing paragraphs as if set forth fully here.

85.      Under the TEXAS INSURANCE CODE, Prudential is unable to enforce the provisions of the Policy and is liable to the Plaintiffs for the full amount of the claim.[14]

86.      Prudential is a person under the TEXAS INSURANCE CODE.

87.      Prudential indirectly or directly assisted John Calandro in the procurement, processing, administration, and claims handling of a contract of insurance.[15]

88.      Mr. Calandro was not licensed as an insurance agent.  Prudential was keenly aware that Mr. Calandro was unlicensed.

89.      Still, Prudential assisted Mr. Calandro in acting as its insurance agent in relation to the Policy.[16]  Mr. Calandro's actions constitute the business of insurance and are prohibited by the TEXAS INSURANCE CODE because he did not have the proper license.

90.      Mr. Calandro is Prudential's agent.[17]  Mr. Calandro's actions are properly imparted on Prudential under the TEXAS INSURANCE CODE.   As such, Prudential is responsible for Mr. Calandro's conduct as an unauthorized person.

---

[14] *See* TEX. INS. CODE § 101.201.

[15] John Calandro did not pay the claim.

[16] *See* TEX. INS. CODE § 4001.051; § 4001.052.

[17] *See* TEX. INS. CODE § 4001.052.

91.     Plaintiffs are entitled to their reasonable attorneys' fees as this is an action against an unauthorized insurer or person on a contract or agreement, which was delivered in this state to a resident of this state and neither Prudential, nor Mr. Calandro, paid the claim on the Policy.

## F.     Unjust Enrichment

92.     Plaintiffs reiterate and adopt each and every statement in the foregoing paragraphs as if set forth fully here.

93.     Pleading in the alternative, Prudential has been unjustly enriched by the payments of the premiums that were paid towards the Policy for 11 years. Prudential has benefited from more than $135,000 in premiums, yet contends that it owes the Policy beneficiary (and its insured's widow) nothing.

94.     Prudential should be required to forfeit the total amount of premiums paid to it by Mr. Eastman, as an agent of the Trust, to the Trust or his estate.

## CONDITIONS PRECEDENT

95.     Plaintiffs reiterate and adopt each and every statement in the foregoing paragraphs as if set forth fully here.

96.     All conditions precedent to Plaintiffs recovery against Prudential have been fully performed, occurred, or have been waived.

## WAIVER AND ESTOPPEL

97.     Plaintiffs reiterate and adopt each and every statement in the foregoing paragraphs as if set forth fully here.

98.     Prudential has waived and is estopped from asserting any defenses, conditions, exclusions, or exceptions to coverage other than non-payment of premiums as stated in the Policy. Further, Prudential has waived and is estopped from asserting any defenses, conditions, exclusions,

or exceptions to coverage based on non-payment of premiums not contained in any reservation of rights or denial letters previously sent to Plaintiffs.

99.     Prudential is estopped from asserting any defenses, conditions, exclusions, or exceptions to premium payments for which it has acknowledged receipt.

## ATTORNEYS' FEES

100.     Plaintiffs reiterate and adopt each and every statement in the foregoing paragraphs as if set forth fully here.

101.     As a result of Prudential's wrongful conduct and breaches, Plaintiffs retained the undersigned counsel to assist in seeking recovery for Plaintiffs' claims, including the filing of this Petition and any further amended or supplemental petitions.  Plaintiffs have incurred and will incur attorneys' fees and costs in bringing this action.

102.     Pursuant to Chapter 38 of the TEXAS CIVIL PRACTICE AND REMEDIES CODE, Plaintiffs are entitled to recover reasonable and necessary attorneys' fees incurred in the prosecution of its claims against Prudential for breach of a written contract — the Policy.

103.     Pursuant to Chapters 541, 542, and 101 of the TEXAS INSURANCE CODE, Plaintiffs are entitled to recover reasonable and necessary attorneys' fees incurred in the prosecution of Plaintiffs' claims against Prudential for its statutory violations.

## RULE 193.7 NOTICE

104.     Pursuant to Rule 193.7 of the Texas Rules of Civil Procedure, Plaintiffs hereby give actual notice to Prudential that any and all documents produced in discovery in this suit and previously produced during in response to Plaintiffs' Rule 202 Petition, including specifically documents bates labeled Pruco.000001-002012 and audio recordings bates labeled Pruco.002013-

002098, may be used against Prudential at any pretrial proceeding and/or at the trial of this matter without the necessity of authenticating the documents.[18]

## JURY TRIAL

105.    Plaintiffs request a jury trial and will tender the applicable jury fee.

## PRAYER FOR RELIEF

**WHEREFORE**, Mike Glazier, as Trustee for the Joel M. Eastman Irrevocable Life Insurance Trust 2008, and Melissa Eastman, as representative of the Estate of Joel M. Eastman, pray that this Court grant judgment in their favor against Defendants Pruco Life Insurance Company and the Prudential Insurance Company of America, and award Plaintiffs:

a.    Actual damages;

b.    Treble damages;

c.    Statutory damages;

d.    Punitive and Exemplary damages;

e.    Pre-judgment and post-judgment interest;

f.    Attorneys' fees and costs of suit;

g.    All such other relief to which they may justly be entitled.

---

[18] *See* Tex. R. Civ. P. 193.7.

Respectfully submitted,

**MUNSCH HARDT KOPF & HARR, P.C.**

By: _/s/ Justin K. Ratley_
    Justin K. Ratley
    State Bar No. 24093011
    jratley@munsch.com
    700 Milam Street, Suite 800
    Houston, Texas 77002
    Caitlin W. Roberts
    State Bar No. 24102942
    croberts@munsch.com
    500 N. Akard Street, Suite 3800
    Dallas, Texas 75201
    (713) 222-1470 (telephone)
    (713) 222-1475 (facsimile)

**ATTORNEYS FOR PLAINTIFFS**

4884-4552-4993v.9

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system.
The filer served this document via email generated by the efiling system
on the date and to the persons listed below. The rules governing
certificates of service have not changed. Filers must still provide a
certificate of service that complies with all applicable rules.

Heather  Valentine on behalf of Justin Ratley
Bar No. 24093011
hvalentine@munsch.com
Envelope ID: 64077404
Status as of 5/5/2022 5:09 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Heather Valentine | | hvalentine@munsch.com | 5/2/2022 9:38:05 AM | SENT |
| Justin Ratley | | jratley@munsch.com | 5/2/2022 9:38:05 AM | SENT |